**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JEFFREY T. BOND, *et al.*, Individually and on behalf of all others similarly situated, ) ) ) | Case No. 2:17-cv-00014 |
| Plaintiffs, ) ) | |
| v. ) ) | JUDGE GEORGE C. SMITH |
| ANTERO RESOURCES CORPORATION, ) ) | MAGISTRATE JUDGE KIMBERLY JOLSON |
| Defendants. ) | |

### DEFENDANT'S MOTION TO PARTIALLY DISMISS COUNT FOUR OF PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Antero Resources Corporation ("Antero") respectfully moves to partially dismiss that portion of Count Four (Breach of Contract Deducting Unauthorized Costs) of Plaintiffs' Second Amended Class Action Complaint (ECF No. 45) concerning the deduction of natural gas transportation charges for failure to state a claim upon which relief may be granted.  A Memorandum in Support of Antero's Motion is attached hereto.

Respectfully submitted,

/s/ William G. Porter
William G. Porter (0017296), Trial Attorney
Peter A. Lusenhop (0069941)
Ilya Batikov (0087968)
Kara M. Mundy (0091146)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 E. Gay St.
Columbus, OH 43215
Telephone:   (614) 464-6400
Facsimile:   (614) 464-6350
wgporter@vorys.com
palusenhop@vorys.com
ibatikov@vorys.com
kmmundy@vorys.com
*Attorneys for Antero Resources Corporation*

**MEMORANDUM IN SUPPORT**

**I.    INTRODUCTION**

By way of context for this Motion to Dismiss, Antero routinely transports Plaintiffs' natural gas from Ohio to distant natural gas markets. When this transportation results in a higher price for Plaintiffs' natural gas, net of the transportation costs to those markets, and thus a higher net royalty for Plaintiffs, Antero deducts from the Plaintiffs' gross natural gas royalties the Plaintiffs' proportionate share of such transportation costs. Antero takes this deduction— denoted as a TRN3 deduction on Plaintiffs' royalty statements—pursuant to the Market Enhancement provisions in Plaintiffs' leases.

Plaintiffs allege at Count Four of their Second Amended Class Action Complaint (ECF No. 45) that Antero breached their leases by improperly deducting Plaintiffs' proportionate share of such transportation costs from Plaintiffs' royalties. Specifically, Plaintiffs contend that Antero's transportation of natural gas to higher-priced, distant markets is actually a "marketing" charge that falls outside of the Market Enhancement clauses in the parties' leases. This claim fails as a matter of law for three related reasons.[1]

*First,* notwithstanding Plaintiffs' characterization of the transportation charge as a "marketing" charge, the Market Enhancement clauses in Plaintiffs' leases expressly authorize Antero to deduct from a lessor's gross royalties the lessor's proportionate share of "**any**" costs, including *specifically* "marketing" and "transportation" costs, provided those costs are (a) charged by a third party and (b) incurred by Antero to enhance the value of the oil, gas and other products produced from leased acreage.

*Second*, the elements of a proper market enhancement deduction—*i.e.,* a third-party charge incurred by Antero to increase the market value of its products—are specifically alleged

---

[1] Although Antero disagrees with Plaintiffs' characterization, it is irrelevant for purposes of this Motion.

1

by Plaintiffs with regard to the very transportation charges Plaintiffs challenge.[2] That is, Plaintiffs specifically allege that when Antero sells natural gas in distant markets at higher prices than are available in the local market (net of the third-party cost of transporting the gas to the higher-priced markets) Antero deducts from the Plaintiffs' gross gas royalties their proportionate share of the third-party cost of that transportation. (ECF No. 45 at ¶¶ 37-38)  This is true. Plaintiffs also correctly state the net effect of this transportation—**an enhancement to the market *value* of gas sold by Antero**—when they state that a MCF of gas sold in distant markets (net of transportation costs) is worth more than a MCF in the local market. (*Id*. at ¶ 38). Therefore, Antero's transportation costs are squarely within the scope of deductible costs under the Market Enhancement clauses.

*Third,* Plaintiffs' reading of the Market Enhancement clauses actually frustrates the purpose of those clauses and leads to absurd results. Plaintiffs' position discourages gas sales at higher prices in distant markets and encourages more sales at lower prices in local markets, thus leading to lower royalties—all to the harm of the very class Plaintiffs purport to represent.

The Court should dismiss Count Four of Plaintiffs' Second Amended Class Action Complaint as it relates to transportation costs for failure to state a claim.

**II.      ALLEGATIONS IN PLAINTIFFS' SECOND AMENDED COMPLAINT**

      **A.      Plaintiffs' Oil and Gas Leases Expressly Permit Royalty Deductions for Market Enhancements.**

Plaintiffs are lessors under two oil and gas leases executed in favor of Antero in 2013. Plaintiff Schmidt Family Enterprises, LLC is the alleged landowner and successor lessor to an Oil and Gas Lease executed by James A. Schmidt and Bonnie J. Schmidt in favor of Antero

---

[2] Though the Market Enhancement clauses in the Plaintiffs' leases require that such costs be charged by a third party, not all Market-Enhancement clauses in the sub-class leases identified by Plaintiffs contain this third-party requirement.

Resources Appalachian Corporation on or around June 25, 2013. (*See* ECF No. 45 at ¶ 4 & Ex. 4.) Plaintiffs Jeffrey T. Bond and Kerrie L. Bond (the "Bonds") are also landowner-lessors to an oil and gas lease executed by the Bonds in favor of Antero in 2013. The Bond and Schmidt leases contain the same relevant terms and conditions, including the same royalty and Market Enhancement clauses. (*Id*. at ¶ 3 & Ex. 3.)

Plaintiffs also identify three putative Sub-Classes of plaintiffs (Sub-Class 1, Sub-Class 2 and Sub-Class 3) and the leases they associate with each Sub-Class. (*Id*. at ¶¶ 45(a)-(c).) The Bond and Schmidt leases fall into what Plaintiffs describe as Sub-Class 2. (*Id*. at ¶ 54.)

All of the identified leases and their respective Market Enhancement clauses specifically and unambiguously authorize the transportation charges that Plaintiffs challenge. For the Court's convenience, excerpts from Plaintiffs' Second Amended Class Action Complaint with Plaintiffs' "Description and Definition of Class," including the applicable lease Market Enhancement clauses, are attached hereto as Exhibit 1. The Market Enhancement clauses are also set forth *verbatim*, below:

> Market Enhancement Clause. It is agreed between the Lessor and Lessee that, notwithstanding any language contained in A) and B) above, to the contrary, all royalties or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, **transporting**, and **marketing** the oil, gas and other products produced hereunder to transform the product into marketable form; **however,** *any such costs* **which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be proportionally deducted from Lessor's share of production** so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price per unit that is less than the price per unit received by Lessee.

(ECF No. 45 at ¶ 45(a) (Market Enhancement clause for Sub-Class 1) (emphasis added).)

> Market Enhancement Clause. It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all royalties for oil, gas or other production (including but not limited to natural gas liquids and/or condensate, such as ethane, propane and butane) accruing to the Lessor under this Lease shall be paid without deduction, directly or indirectly, for the costs or expenses of Lessee (or an Affiliate of Lessee) relating to producing, gathering, storing, separating, treating, dehydrating, compressing, processing, **transporting**, and **marketing** the oil, gas and other products produced hereunder; *provided, however,* Lessee may deduct from Lessor's royalties accruing under the Lease, Lessor's proportionate share of **any cost or expense actually incurred**

3

>> **and charged to Lessee by a third party** that is not owned or controlled by Lessee and relating thereto on the express condition such costs or expenses arc **necessarily incurred to enhance the value of the oil, gas or other products**, including transforming product into a marketable form, and in any such case, the computation of the Lessor's royalty shall include the additional consideration, if any, paid to Lessee as a result of any **enhancement of the market value** of such products.

(ECF No. 45 at ¶ 45(b) (Market Enhancement clause for Sub-Class 2) (emphasis added).)

>> Market Enhancement Clause. It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all royalties for oil, gas or other production (including but not limited to natural gas liquids and/or condensate, such as ethane, propane and butane) accruing to the Lessor under this Lease shall be paid without deduction, directly or indirectly, for the costs or expenses of Lessee (or an Affiliate of Lessee) relating to producing, gathering, storing, separating, treating, dehydrating, compressing, processing, **transporting**, and **marketing** the oil, gas and other products produced hereunder; provided, however, **Lessee may deduct** from Lessor's royalties accruing under the Lease, **Lessor's proportionate share of any cost or expense actually incurred and charged to Lessee by a third party** that is not owned or controlled by Lessee and relating thereto on the express condition such costs or expenses are necessarily **incurred to enhance the value of the oil, gas or other products**, including transforming product into a marketable form, and in any such ease, the computation of the Lessor's royalty shall include the additional consideration, if any, paid to Lessee as a result of any **enhancement of the market value** of such products.

(ECF No. 45 at ¶ 45(c) (Market Enhancement clause for Sub-Class 3) (emphasis added).)

### B. Plaintiffs Plead Specific Allegations Supporting the Deduction of Transportation Under All Identified Leases.

Not only do Plaintiffs identify leases that expressly permit the deductions of which they complain, but Plaintiffs also allege specific facts demonstrating that the transportation deductions are proper cost deductions under the Market Enhancement clauses of their leases and the leases of the putative class members. For the Court's convenience, the relevant allegations from Plaintiffs' Second Amended Class Action Complaint are set forth *verbatim* below:

> *a. Antero's Market Enhancement Actual Costs Deduction Policies*
>
> 37. Antero regularly deducts natural gas pipeline transportation costs to out of state markets ("Transportation Deduction") from natural gas royalty payments… based upon market enhancement provisions in leases. Market enhancement provisions in leases state that Antero may deduct costs charged by third parties and incurred by Antero to enhance the value of the natural gas, oil, or other products from Leaseholder royalty payments.
>
> 38. If the **market price of 1 MCF of natural gas in the outside market** minus the costs to transport 1 MCF of natural gas **is greater than the market price of 1 MCF of natural**

4

**gas near the well**, then Antero will make a Transportation Deduction denoted as TRN_3 on the Royalty Statement. *Exhibit 11*. …. .

\* \* \* \*

81. Under Ohio law, an oil and gas lease is a contract subject to the traditional rules of construction. *Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St.3d 524 (2016). The rights and remedies of the parties are controlled by the specific language of their lease agreement. *Id*. Contracts are interpreted to carry out the parties' intent, which is evidenced by the contractual language. *Id*. Extrinsic evidence may be introduced if the contractual language is ambiguous. *Id.*

82. **Market enhancement provisions in the Form Leases allow Antero to deduct costs charged by third parties and incurred by Antero to enhance the value of the natural gas, oil, or other products from Leaseholder royalty payments.** The Transportation Deduction violates all of the Form Leases because **transportation in a pipeline to an outside market for sale is nothing more than part of the marketing process**, which is a cost incurred by Antero. Transportation within a pipeline does nothing to enhance the value of the product itself. **The increase in price** comes from **marketing** efforts to move the natural gas to markets with **better prices**, rather than the transportation process actually enhancing the value of the natural gas or transforming it into marketable form. **If Antero chooses to use marketing to achieve greater prices for its natural gas and derive greater benefit, the Leaseholder should benefit from that marketing.** Antero does not charge for local transportation costs in the TETCO M2 zone, because it recognizes transportation by itself does not enhance value.

(ECF No. 45 at ¶¶ 37-38, 40, 80-82 (emphasis added).)

### III. ARGUMENT

**A. Plaintiffs Have Not and Cannot State a Cause of Action for Breach of Contract Based on Antero's Deduction of Transportation Costs.**

**1. All identified leases allow for deduction of transportation costs where those costs result in market enhancements.**

Plaintiffs' Count Four relating to transportation costs fails as a matter of law because the clear and unambiguous language of the leases allow for the deductions that Plaintiffs contend are in error.

Plaintiffs allege that the cost of transporting gas to higher-priced markets falls outside of the Market Enhancement clauses in their leases because it is actually a "marketing" cost. (ECF

5

No. 45 at ¶ 82.) But the Market Enhancement clauses in the Plaintiffs' leases, and in all of the leases of putative Sub-Class plaintiffs, clearly and unambiguously authorize Antero to deduct from the lessor's royalties the lessor's proportionate share of *any* third-party cost or expense incurred by Antero that results in enhancing the market value of the oil or natural gas produced from the lessor's leasehold, including marketing *and* transportation costs.

The Market Enhancement clauses in the leases for Sub-Classes 1, 2 and 3 share a common structure. Each Market Enhancement clause first provides a list of costs that are ***not*** deductible from a lessor's gross royalties, followed by the exceptions to that rule. As spelled out in the leases, to be deductible under the Market Enhancement clauses, a cost must meet certain criteria; *i.e.*, it must be an actual, third-party cost incurred by Antero that increases the value of the subject product (in this case gas). (*See* Sub-Class Market Enhancement clause at ECF No. 45 at ¶¶ 45(a)-(c).)

Each Market Enhancement clause in Sub-Class leases 1, 2 and 3 also includes express language providing that that "transportation" and "marketing" costs are not deductible from a lessor's royalties *in the first instance*. (*Id.*) However, each Market Enhancement clause goes on to state that Antero may deduct a lessor's proportionate share of "*any such costs*" (Sub-Class 1) or "*any costs*" (Sub-Classes 2 and 3), provided that the subject cost meets the criteria for deductibility under the Market Enhancement clause. (*Id.*) The statement "any *such* costs" in the Sub-Class 1 leases clearly includes the prior reference in the Sub-Class 1 leases to "transportation" and "marketing" costs. The broad statement "***any costs***" in the Sub-Classes 2 and 3 leases necessarily includes the prior reference to "transportation" and "marketing" costs in those leases. (*Id.*) Thus, if the transportation costs identified by Plaintiffs result in a market enhancement, which Plaintiffs themselves allege they do, then those costs are in fact deductible

6

under all of the Sub-Class 1, 2, and 3 leases and Plaintiff's Count Four fails as a matter of law under the plain, unambiguous language of the parties' contracts.

### 2. Plaintiffs specifically allege that transportation charges are Market Enhancement charges.

A claim may be dismissed under Rule 12(b)(6) were a plaintiff's own admissions prevent the plaintiff from stating a claim upon which relief may be granted. *See, e.g, D & S Remodelers, Inc. v. Wright Nat'l Flood Ins. Servs., LLC*, 6th Cir. No. 17-5554, 2018 U.S. App. LEXIS 3382, *17 (Feb. 14, 2018); *Berrylane Trading, Inc. v. CNA Fin. Corp.*, N.D. Ohio No. 1:17-CV-2360, 2018 U.S. Dist. LEXIS 3803, *11 (Jan. 9, 2018).

Plaintiffs allege that the challenged natural gas transportation costs are "marketing" costs. (ECF No. 45 at ¶ 82.) Marketing costs are expressly included, permitted deductions under the Market Enhancement clauses in Sub-Class leases 1, 2 and 3. (ECF No. 45 at ¶¶ 45(a)-(c).) Plaintiffs allege that these costs are charged to Antero by third parties. (*Id*. at ¶¶ 37, 38.) Finally, Plaintiffs specifically allege that these costs increase the value of the gas by stating that a MCF of gas sold in distant markets (net of transportation costs) is worth more than a MCF in the local market. (*Id*. at ¶ 38.)

By Plaintiffs' own admissions, the deductions for gas transportation costs, which they themselves characterize as marketing costs, are expressly authorized under the clear and unambiguous terms of the parties' leases as appropriate deductions under the Market Enhancement clauses. Thus, Count Four fails as a matter of law.

### B. Plaintiffs' Reading of the Leases Leads to Absurd Results That Would Harm Their Putative Class

There are also prudential reasons to grant Antero's Motion to Dismiss Count Four as it relates to transportation costs. The rules of contract construction "'do[] not allow a court to

7

adopt an unreasonable interpretation of the contract.'" *Dominion Liquid Techs., LLC v. GT Bev. Co., LLC*, S.D. Ohio No. 1:11-CV-444, 2014 U.S. Dist. LEXIS 33841, *15 (March 14, 2014) (citing omitted). *See also Waste Mgmt., Inc. v. Danis Indus. Corp*., 257 F. Supp. 2d 1076, 1083 (S.D. Ohio 2003) ("Of course, a contract must not be interpreted in a manner which leads to an absurd result.").

Plaintiffs' interpretation of the leases between the parties would lead to an absurd result by causing significant economic harm to the very class of leaseholders they seek to represent. If the leases are read to prohibit Antero from taking these deductions, it would create a disincentive to increase Plaintiffs' and putative class members' royalty payments by selling gas in distant markets at higher prices. Increased sales at depressed, local market prices would actually drive down the royalties received by the Plaintiffs and other putative class members. These results are not only contrary to the clear language and purpose of the Market Enhancement clauses, but also to the economic interests of the Plaintiffs and putative class members.

## IV. <u>CONCLUSION</u>

Plaintiffs are correct when they allege that, "[u]nder Ohio law, an oil and gas lease is a contract subject to the traditional rules of construction. *Lutz v. Chesapeake Appalachia, L.L.C*., 148 Ohio St.3d 524 (2016)." (ECF No. 45 at ¶ 81) Where the language of the parties' contracts is clear and unambiguous – as it is here – the court may construe the parties' contracts as a matter of law. *DavCo. Acquisition Holding, Inc. v. Wendy's Int'l, Inc*., S.D. Ohio No. 2:07-CV-1064, 2008 U.S. Dist. LEXIS 27108, *7-9 (March 19, 2008) (citing *Latina v. Woodpath Development Co*., 57 Ohio St.3d 212, 214, 567 N.E.2d 262 (1991); *Alexander v. Buckeye Pipe Line Co*., 53 Ohio St.2d 241, 374 N.E.2d 146 (1978)).

Likewise, where, as here, a party pleads a claim that is barred by the clear and unambiguous language of the parties' written contracts, the court may dismiss that claim as a matter of law for failure to state a claim. *See, e.g., White v. NVR Inc.*, S.D. Ohio No. 1:09-CV-142, 2010 U.S. Dist. LEXIS 35565, *6 (March 11, 2010).

For all of the reasons set forth above, Defendant Antero Resources Corporation respectfully requests that the Court dismiss with prejudice Count Four of Plaintiffs' Second Amended Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

Respectfully submitted,

/s/ William G. Porter
William G. Porter (0017296), Trial Attorney
Peter A. Lusenhop (0069941)
Ilya Batikov (0087968)
Kara M. Mundy (0091146)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 E. Gay St.
Columbus, OH 43215
Telephone:   (614) 464-6400
Facsimile:   (614) 464-6350
wgporter@vorys.com
palusenhop@vorys.com
ibatikov@vorys.com
kmmundy@vorys.com

*Attorneys for Defendant
Antero Resources Corporation*

**CERTIFICATE OF SERVICE**

  I hereby certify that on April 18, 2018, the foregoing was filed electronically. Notice of this filing will be sent to all parties who have appeared in this action via the Court's electronic filing system. Parties may access this filing through the Court's system.

               /s/ Kara M. Mundy
               Kara M. Mundy (0091146)