# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**JEFFREY T. BOND,**

    **Plaintiff,**

    v.                                Civil Action 2:17-cv-14
                                         Magistrate Judge Jolson

**ANTERO RESOURCES CORPORATION, et al.,**

    **Defendants.**

## OPINION AND ORDER

This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Docs. 16, 22), is before the Court on a Partial Motion to Dismiss filed by Defendant Antero Resources Corporation pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 47). For the reasons that follow, Defendant's Partial Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

This putative class action was brought by mineral rights owners on behalf of three subclasses of Plaintiffs who have entered into leases with Defendant for the production of oil and gas. Relevant here, Plaintiffs allege in Count Four of the Second Amended Class Action Complaint that Defendant breached the leases by improperly deducting natural gas transportation charges from their royalty payments. (Doc. 45 at ¶¶ 80–85). Defendant has moved to dismiss that portion of Count Four. (Doc. 47 at 1–2). Plaintiffs filed an Opposition (Doc. 51), and Defendant filed a Reply (Doc. 54). Thus, the Partial Motion to Dismiss is now ripe for resolution.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true. *Twombly*, 550 U.S. at 57. "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added) (citing *Twombly*, 550 U.S. at 556).

On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (Plaintiff must give specific, well-pleaded facts, not just conclusory allegations). In other words, while "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" rule, the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78, *quoting Twombly*, 550 U.S. at 555 (citing to *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III. DISCUSSION

It is well established that the substantive law of the forum state applies to matters before the court pursuant to its diversity jurisdiction. *See Davis v. Sears, Roebuck and Co.*, 873 F.2d 888, 892 (6th Cir. 1989). "Under Ohio law, an oil and gas lease is a contract subject to the traditional rules of construction." *Lutz v. Chesapeake Appalachia, L.L.C.*, 71 N.E.3d 1010, 1011 (Ohio 2016). The Sixth Circuit has succinctly explained Ohio's rules of construction.

> Under Ohio law, "[w]hen confronted with an issue of contract interpretation, [a court's] role is to give effect to the intent of the parties." *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 953 N.E.2d 285, 292 (2011). To that end, courts should examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract. In addition, [courts should] look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. *Id.* Courts may examine extrinsic evidence to ascertain the parties' intent only if the contract is ambiguous. *Shifrin v. Forest City Enters.*, 64 Ohio St.3d 635, 597 N.E.2d 499, 501 (1992).

*Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 361 (6th Cir. 2014). Contract language is ambiguous if it cannot be assigned a "definite legal meaning." *Id.* Or, put another way, a contract provision is ambiguous if it is amenable to "more than one reasonable interpretation." *Id.* (citing *Lager v. Miller–Gonzalez* 896 N.E.2d 666, 669 (Ohio 2008)). The Ohio Supreme Court has explained that "[o]nly when a definitive meaning proves elusive should rules for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling." *Id.* (citing *State v. Porterfield*, 829 N.E.2d 690, 692–93 (Ohio 2005)).

Here, Defendant contends that "[a]ll of the identified leases and their respective Market Enhancement clauses specifically and unambiguously authorize the transportation charges Plaintiffs challenge" because they resulted in an increase in the value of the product. (Doc. 47 at 3). Three lease provisions are relevant to this argument:

**Market Enhancement clause for Sub-Class 1:**

> Market Enhancement Clause. It is agreed between the Lessor and Lessee that, notwithstanding any language contained in A) and B) above, to the contrary, all royalties or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; *however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be proportionally deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.* However,

3

in no event shall Lessor receive a price per unit that is less than the price per unit received by Lessee.

**Market Enhancement clause for Sub-Class 2:**

Market Enhancement Clause. It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all royalties for oil, gas or other production (including but not limited to natural gas liquids and/or condensate, such as ethane, propane and butane) accruing to the Lessor under this Lease shall be paid without deduction, directly or indirectly, for the costs or expenses of Lessee (or an Affiliate of Lessee) relating to producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder; *provided, however, Lessee may deduct from Lessor's royalties accruing under the Lease, Lessor's proportionate share of any cost or expense actually incurred and charged to Lessee by a third party that is not owned or controlled by Lessee and relating thereto on the express condition such costs or expenses are necessarily incurred to enhance the value of the oil, gas or other products*, including transforming product into a marketable form, and in any such case, the computation of the Lessor's royalty shall include the additional consideration, if any, paid to Lessee as a result of any enhancement of the market value of such products.

**Market Enhancement clause for Sub-Class 3:**

Market Enhancement Clause. It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all royalties for oil, gas or other production (including but not limited to natural gas liquids and/or condensate, such as ethane, propane and butane) accruing to the Lessor under this Lease shall be paid without deduction, directly or indirectly, for the costs or expenses of Lessee (or an Affiliate of Lessee) relating to producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder; *provided, however, Lessee may deduct from Lessor's royalties accruing under the Lease, Lessor's proportionate share of any cost or expense actually incurred and charged to Lessee by a third party that is not owned or controlled by Lessee and relating thereto on the express condition such costs or expenses are necessarily incurred to enhance the value of the oil, gas or other products,* including transforming product into a marketable form, and in any such case, the computation of the Lessor's royalty shall include the additional consideration, if any, paid to Lessee as a result of any enhancement of the market value of such products.

(*Id.* (quoting Doc. 45 at ¶ 45(a)–(c)) (emphasis added)) . Based on this language, Defendant argues, *inter alia*, that the royalty deductions are expressly permitted. (*Id*. at 5–7).

Plaintiffs counter that the market enhancement clauses limit Defendant's right to deduct transportation costs. (Doc. 51 at 4). According to Plaintiffs, "[m]arket enhancement involves a change or the process of change" for improvement or increased value," and "[t]ransporting the product … not produce a change." (*Id*. at 5). Consequently, Plaintiffs assert that Defendant improperly deducted transportation charges from their royalty payments. (*Id*.).

### A. Subclass 1

The Market Enhancement clause for Subclass 1 distinguishes between pre-production costs and post-production costs. Under the provision's plain language, Defendant may not deduct pre-production costs from Plaintiffs' royalties. *See supra* Market Enhancement clause for Sub-Class 1. That is, Defendant may not deduct costs arising from actions taken "to transform the product into marketable form." *Id*.

The contract language *does*, however, allow Defendant to deduct post-production costs from Plaintiffs' royalties if those costs enhance the value of the marketable gas. *Id*. Specifically, the contract allows Defendant to deduct "any such costs which result in enhancing the value" of the gas "to receive a better price." *Id*. The next logical question then is whether transporting the gas resulted in a better price. Here, there is no dispute that it did. (*See* Doc. 45).

The Second Amended Complaint expressly provides that "[t]he increase in price" is derived from "mov[ing] the natural gas to markets with better prices." (*Id*. at ¶ 82). Thus, Plaintiff's claim raises only the narrow question of whether the cost deduction was allowable in the first instance. Because the deduction at issue is permitted under the plain language of the contract, Plaintiffs' Partial Motion to Dismiss as it applies to this claim is **GRANTED**.

### B. Subclasses 2 and 3

The Market Enhancement clause applicable to Subclasses 2 and 3 is substantially the same in that it disallows the deduction from Plaintiffs' royalties particular costs, such as

"producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing …." *See supra* Market Enhancement clause for Sub-Classes 2 and 3. Additionally, the contract language applicable to those Subclasses specifically allows Defendant to deduct a "proportionate share of any cost or expense actually incurred and charged by a third party" provided that "such costs or expenses are necessarily incurred to enhance the value" of the gas. *Id*. Although the contract language for Subclasses 2 and 3 introduces a third-party requirement not present in the language for Subclass 1, it likewise allows Defendant to deduct costs from Plaintiffs' royalties if those costs enhance the value of the marketable gas. *Id*. As pled, Plaintiffs claim does not raise the factual question of whether the transportation costs were indeed incurred by a third party, but whether the cost deduction was permitted. (*See* Doc. 45). For that reason, Plaintiffs' Partial Motion to Dismiss as it applies to this claim is likewise **GRANTED**.

## IV. CONCLUSION

Although Plaintiffs oppose Defendant's Motion by raising questions it contends can be answered only through fact discovery (*see* Doc. 51 at 8), Plaintiffs may not amend their complaint in a memorandum in opposition. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss" and "it may have been questionable for the district court to have relied on the plaintiffs' briefs to embellish the conclusory allegations of the complaint."); *see also Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1974) (noting that courts will not accept conclusions of law or unwarranted inferences). Presuming, as this Court should, that the intent of the parties is reflected in the contract language, which is given its plain and ordinary meaning, Plaintiffs fail to state a claim for breach of the leases based on

Defendant's deduction of natural gas transportation costs from their royalty payments. Consequently, Defendant's Partial Motion to Dismiss is **GRANTED** (Doc. 47), and the portion of Count Four of the Second Amended Class Action Complaint that alleges breach of the leases based on the deduction of natural gas transportation costs from the royalty payments is **DISMISSED**.

    IT IS SO ORDERED.


Date: June 28, 2018                              /s/Kimberly A. Jolson
                                                        KIMBERLY A. JOLSON
                                                        UNITED STATES MAGISTRATE JUDGE