# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**JEFFREY T. BOND et al,**

      **Plaintiffs,**

   v.                                                          Civil Action 2:17-cv-14
                                                                   Magistrate Judge Jolson

**ANTERO RESOURCES**
 **CORPORATION et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Docs. 16, 22), is before the Court on Plaintiffs' Motion to Certify Action as a Class Action and to Appoint Class Counsel. (Doc. 60). For the reasons that follow, the Motion is **DENIED**.

## I.    BACKGROUND

Defendant is an independent exploration and production company engaged in the exploitation, development, and acquisition of natural gas, natural gas liquids (NGLs) and oil properties located in the Appalachia Basin. Plaintiffs are landowners in Noble County, Ohio who leased mineral rights to Defendant. (Doc. 45 at ¶¶ 3–4). Plaintiffs bring this putative class action on behalf of three subclasses of leaseholders who have entered into leases with Defendant for the production of oil and gas. (*Id.* at ¶¶ 44–45).

Upon the execution of a lease for the Plaintiffs' mineral rights, Defendant would drill a horizontal oil and gas well on the property subject to the lease. (*Id.* at ¶¶ 1–2). In exchange for

the leasing of their mineral rights, Plaintiffs received royalties from Defendant's production and sale of that oil and gas. (*Id.* at ¶ 2).

Relevant here, between 2012 and 2017, Defendant purportedly used a series of form contracts when negotiating leases with certain property owners: Form 2012, Form 2013, and Form 2014 (the "Form Leases"). (*Id.* at ¶ 45); *see also* (Docs. 44-7, 44-8, 44-9). The Form Leases contain similar, if not identical, provisions for calculating lessors' oil and gas royalties and deductions from the same. (Doc. 45 at ¶ 45). According to Plaintiffs, Defendant breached the Form Leases through a uniform practice of underpaying oil and gas royalties and deducting unauthorized taxes and unauthorized costs from those royalties. (*Id.* at ¶¶ 56–85).

Defendant previously moved to dismiss a portion of Count Four. (Doc. 47). The Court granted that motion in its Opinion and Order (Doc. 57) dated June 28, 2018. Plaintiffs subsequently filed the instant Motion on July 13, 2018. Defendant filed its Opposition (Doc. 72) on August 10, 2018. Plaintiffs filed their Reply in Support of Plaintiffs' Motion to Certify Class (Doc. 83), and Defendant submitted a Surreply (Doc. 86). The Motion is now ripe for resolution.

## II.  STANDARD FOR CLASS CERTIFICATION

To obtain class certification, the plaintiffs must show that:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "These four requirements—numerosity, commonality, typicality, and adequate representation—serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,

722 F.3d 838, 850 (6th Cir. 2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011)).

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Relevant here, "[t]o qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Id.* at 615 (quoting Fed. R. Civ. P. 23(b)(3)).

In reviewing a motion for class certification, district courts are obligated to conduct a "rigorous analysis" of the Rule 23 requirements. *In re Whirlpool*, 733 F.3d at 851 (citation omitted). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350. *See also In re Whirlpool*, 722 F.3d at 851 (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)) ("[T]he class determination should be predicated on evidence presented by the parties concerning the maintainability of the class action."). "The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

The standard for Plaintiffs' evidentiary burden is a subject of debate. "The trend in recent cases has been a move from lighter or loosely defined burdens towards adoption of a preponderance of the evidence standard to facts necessary to establish the existence of a class." 3 Newberg on Class Actions § 7:21 (5th ed. 2018). *See also Wilkof v. Caraco Pharm.*

*Laboratories, Ltd.*, 280 F.R.D. 332, 338 (E.D. Mich. 2012) (stating that the requirements of Rule 23 "must be proven by a preponderance of the evidence"); *Shepherd v. Babcock & Wilcox of Ohio*, 2000 WL 987830, *1 n.5 (S.D. Ohio Mar. 3, 2000) ("The appropriate burden to impose upon the Plaintiffs herein is the preponderance of the evidence standard"). However, the Sixth Circuit has declined to adopt the preponderance of the evidence standard when analyzing class certification. *See Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 418 n.8 (6th Cir. 2012) (noting that while some circuits have adopted the preponderance of the evidence standard, "[t]he Sixth Circuit uses the 'rigorous analysis' requirement, never mentioning whether a 'preponderance' standard is appropriate. The Supreme Court did the same in *Wal–Mart*. We see no reason to superimpose a more specific standard than the Supreme Court[.]"). Absent further guidance from the Sixth Circuit, the Court applies the rigorous analysis requirement here.

## III. DISCUSSION

This is an unusual case. Class certification typically turns on a substantive analysis of the requirements of Rule 23(a) and Rule 23(b). But this case turns on a more fundamental issue: whether Plaintiffs have provided sufficient *proof* to support their arguments in support of class certification. Because they have not, the Court denies their Motion.

### A. Rule 23(a)

#### 1. Numerosity

Unlike in many cases where numerosity is a given, here the parties hotly dispute whether Plaintiffs can satisfy Rule 23(a)'s numerosity requirement. Plaintiffs contend that they easily satisfy this requirement because the class could range in size from nearly 350 members to in excess of 850 members. (Doc. 60 at 6–7). In support, Plaintiffs describe Defendant's network of horizontal gas and oil wells and use an analysis of one of those wells to extrapolate the size of

4

the potential class. (*Id.* at 4–5). Plaintiffs also insist that "evidence provided in the [Second Amended Complaint] and the Motion to Certify will show the class is well over 100 members geographically spread across Ohio with no means of uniting in one lawsuit making joinder difficult and inconvenient." (Doc. 83 at 17). They note that Defendant has produced 6,306 leases in this matter and that, "[i]f only 10% were class members, then the class would still be over 600 lessors randomly spread across hundreds of miles." (*Id.*).

In response, Defendant counters that this is mere speculation because Plaintiffs have failed to provide proof that their proposed class is, in fact, sufficiently numerous to certify. (Doc. 72 at 26–27). According to Defendant, Plaintiffs' estimate of the potential class has no evidentiary foundation. (*Id.* at 26). And because speculative estimates regarding numerosity are insufficient to satisfy Rule 23(a), Defendant asserts that Plaintiffs' Motion should be denied.

To prove numerosity, Plaintiff must demonstrate that the putative class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Relevant here, "'impracticability of joinder must be positively shown, and cannot be speculative.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012) (quoting *Golden v. City of Columbus*, 404 F.3d 950, 965–66 (6th Cir. 2005)). Although "[t]here is no strict numerical test for determining impracticability of joinder," *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted), "[t]he facts of the case guide a court's determination that the class is sufficiently large to make joinder impractical," *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (citing *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980)).

The Sixth Circuit's decisions in *Young* and *Golden* guide the Court here in determining whether Plaintiffs have done enough. In *Young*, the plaintiffs were a group of insurance policyholders who alleged "that they were assessed incorrect charges for local government

5

premium taxes as a result of [d]efendants' failure to correctly identify the taxing jurisdiction in which the insured risks of each of the policyholders were located." 693 F.3d at 535. In the district court, the plaintiffs presented (i) expert testimony regarding the total number of policies written by each defendant; (ii) evidence regarding their "past experience with identifying members of other settlement subclasses in related actions"; and (3) evidence from the Kentucky Office of Insurance "when it conducted random market analyses of some insurers." *Id.* at 541. Relying on this evidence, the district court inferred that "a 1% error rate could be attributed to the assignment of premium tax rates by all [d]efendants." *Id*.

On appeal, defendants challenged this inference, arguing that the district impermissibly calculated the size of the class base on an unsupported assumption. The Sixth Circuit disagreed. It explained, "'[i]n ruling on a class action a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings.'" *Id*. (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976)). Based on the evidence in the record, the Court concluded that "[i]t was within the district court's discretion to infer that the 1% error rate was applicable to the [d]efendants." *Young*, 693 F.3d at 541 (collecting cases).

In *Golden*, by contrast, the Sixth Circuit rejected the putative class of plaintiffs' numerosity argument as "too speculative." 404 F.3d at 966. There, the plaintiffs brought a class action complaint alleging that the defendant's "practice of terminating tenants' water service without notice and the possibility of a hearing amounted to a denial of tenants' [constitutional and statutory rights]." *Id.* at 954. They sought to represent a class of tenants "whose water service was or will be terminated because of the landlord's or prior tenant's indebtedness." *Id.* at 966. At class certification, the plaintiffs asserted that joinder of 150,000 tenants in Columbus was impracticable. *Id*.

6

The district court rejected this argument, and the Sixth Circuit affirmed, reasoning that "merely referring to [the number of tenants] does not suffice for purposes of proving numerosity under Rule 23(a)(1)." *Id*. at 966. Instead, the Court held, a plaintiff "must offer something more than bare speculation to link the gravamen of her claim for liability to the class of individuals she purports to represent." *Id*. Emphasizing the district court's obligation to engage in "rigorous analysis," the Court concluded that the plaintiffs' reliance on "such an unrefined measure" was "too speculative for purposes of the numerosity requirement." *Id*. (citation omitted).

So too here. As in *Golden*, and in contrast to *Young*, Plaintiffs rely on speculation, rather than facts, to support their numerosity argument. Indeed, what is most striking about Plaintiffs' numerosity argument is their failure to provide or cite relevant testimony, exhibits, or affidavits in support. (*See* Doc. 60 at 3–7; Doc. 83 at 17). Instead, when discussing numerosity, Plaintiffs cite a production flow chart (Doc. 45-1), Form Leases (Docs. 44-7 to 44-9), and a purported map of the Seneca Gathering System (Doc. 83-7). But the production flow chart and Form Leases have no bearing on the numerosity issue. The map of Seneca Gathering System appears to provide, at best, information regarding the geographic scope of the proposed class. This lack of proof is particularly concerning given that the parties have had ample opportunity to conduct fact discovery. (*See* Docs. 28, 32 (extending deadlines for class discovery and disclosure of expert witnesses)). Decisions regarding numerosity must be grounded in facts and reasonable inferences that can be drawn from those facts. In the absence of facts here, Plaintiffs have failed to satisfy Rule 23(a)(i).

Plaintiffs also cite their pleadings. The Second Amended Complaint defines the proposed class as "all leaseholders of all horizontal gas and oil wells in the Seneca Gathering System who signed an Antero Form Lease from 2012 to 2017, which have no material alterations

7

in the provisions of their leases regarding royalty payment calculation." (Doc. 45, ¶ 44). Plaintiffs offer the following arguments in support of their position that joinder of class members is impracticable:

- Defendant's network of horizontal gas and oil wells in the Seneca Gathering System includes 173 horizontal wells in Nobel and Monroe counties. (Doc. 60 at 4–5).

- One of those wells, the Hall 1H well, is comprised of parcels from five lessors that executed a Form Lease with no material alterations in the provisions of their releases regarding royalty payment calculation. (*Id.* at 5–6).

- "The pattern of lease types [at the Hall 1H well] is common among the 173 wells in the Seneca Gathering System. Most wells have multiple lessees with Antero Form Leases." (*Id.* at 5).

- 25 of the 172 wells have multiple lessors who executed Form Leases. (*Id.* at 6).

- Assuming that the Hall 1H well is representative of the other 172 wells, the class is likely comprised of more than 850 members. (*Id.* at 7).

- Even using "[a] conservative estimate" of two Form Leases per well "would bring the proposed class to nearly 350 members[.]" (*Id.* at 6–7).

- Defendant has produced 6,306 leases in this matter, and, "[i]f only 10% were class members, then the class would still be over 600 lessors randomly spread across hundreds of miles." (Doc. 83 at 17).

The Court is unable to find that these conclusory assertions satisfy Rule 23(a)(i) because Plaintiffs offer no evidence to support them. They do not provide exhibits supporting their analysis of the Hall 1H well. Nor do they present evidence that would allow the Court to conclude that: (i) the pattern of lease types at the Hall 1H well is common among the other 172 wells in the Seneca Gathering System; (ii) most wells in the system have lessors that executed a Form Lease; or (iii) 10% of the leases produced by Defendants in this matter are Form Leases that fall within the proposed class definition. Had they produced such evidence, the Court would have little trouble concluding that they satisfied the numerosity requirement. But without

evidence from which to draw inferences, this case is like *Golden*. *See* 404 F.3d at 966 (noting that relying on an "unrefined measure" is insufficient to satisfy the numerosity requirement).

Plaintiffs attempt to rebut this conclusion. They maintain that they do not have to identify each class members at this stage and that it would be too time consuming for them to individually review each of the 6,306 leases produced by Defendants prior to certification. (Doc. 83 at 17). The Court agrees and does not expect Plaintiffs to identify each class member at this stage. *See* 1 Newberg on Class Actions § 3:13 (5th ed. 2018) ("[I]t is well settled that a plaintiff need not allege the exact number or specific identity of proposed class members."). The Court does, however, expect—and the Rules require—Plaintiffs to make an affirmative showing that they satisfy the numerosity requirement.

Although Plaintiffs do not cite it in support of their numerosity argument, their most potentially promising piece of evidence appears to be a spreadsheet produced by the Defendant (the "S&L Spreadsheets"). The S&L Spreadsheets identify a number of individual leaseholders in the Seneca Gathering System who executed leases for mineral rights in the past seven years and whose leases have been acquired by, or were executed with, Defendant. (*See* Doc. 83-6). They appear to include, among other things, information regarding the original lessor, the original lessee, the lease date, the current mineral owner, and, most importantly, the lease form. (*See id*.). The lease form is identified as "Independent" or by the name of the company from whom Defendant, presumably, acquired the lease (e.g., "Fossil Creek Energy Corporation"). (*See id*.). When discussing the commonality requirement regarding Defendant's accounting practices, Plaintiffs offer the following explanation of the lease forms described in the S&L Spreadsheets:

> The spreadsheets list all leases executed by Antero with separate columns for each describing the lessor, lease form, unit acres, oil stabilization exemption, gas

9

> production cost deductions, and tax component exemptions. The "Lease Form" column requires an Antero employee to enter whether a lease is a Fossil Creek, Eclipse Resources, or "Independent" form lease. An "Independent" form lease is either an Antero Form Lease, historic form lease, or a lessor-provided form lease. Leases labeled "Independent" with lease dates in 2012, 2013, and 2014 are typically Antero form leases.

(Doc. 83 at 8 (internal citations omitted)).

But this explanation suffers from the same deficiency as Plaintiffs' actual arguments regarding numerosity: Plaintiffs offer no evidence to support it. Instead, Plaintiffs offer only their counsel's conclusory assertions. These unsupported assertions are not evidence and cannot satisfy Plaintiffs' burden. *See Tapco Prods. Co. v. Van Mark Prods. Corp.*, 446 F.2d 420, 429 (6th Cir. 1971) ("The unsworn, self-serving statements of counsel are not evidence."); *Overlook Mut. Homes, Inc. v. Spencer*, 666 F. Supp. 2d 850, 853 n.3 (S.D. Ohio 2009) ("[S]tatements of counsel in a memorandum are not evidence"). Without more, the S&L Spreadsheets appear to identify potential leaseholders in the Seneca Gathering System. But they do not identify the specific type of lease to which each leaseholder is a party. Similarly, the Second Amended Complaint references a "computer-generated analysis of [Defendant's] Ohio leases," which purportedly provides an accurate estimation of the number of class members. (Doc. 45, ¶ 47). Plaintiffs have not provided that analysis to the Court and do not cite it in their briefing on their Motion. More importantly, as with the S&L Spreadsheets, they do not provide evidence supporting their characterization of that analysis.

Like the plaintiffs in *Golden*, Plaintiffs have offered a total population of which some unknown number of individuals may be class members. This is not sufficient under Rule 23(a)(i). *See Golden*, 404 F.3d at 966 (holding that a plaintiff "must offer something more than bare speculation to link the gravamen of her claim for liability to the class of individuals she purports to represent.").

Because Plaintiffs have failed to demonstrate that there are "*in fact* sufficiently numerous parties" to make joinder impracticable, *Dukes*, 564 U.S. at 350, the Court denies Plaintiffs' Motion. *See, e.g.*, *Davis v. City of Detroit*, No. 15-10547, 2018 WL 4179316, at *5 (E.D. Mich. Aug. 31, 2018) (finding that plaintiff failed to satisfy the numerosity requirement because extrapolating class size based on "extremely generalized testimony" would be "overly speculative"); *Davis v. Strickland*, No. 2:09-CV-015, 2009 WL 2047891, at *5 (S.D. Ohio July 7, 2009), *report and recommendation adopted*, No. 2:09-CV-015, 2009 WL 2998980 (S.D. Ohio Sept. 15, 2009) (citation omitted) ("Plaintiffs' bare speculation is insufficient to satisfy the numerosity requirement."); *Edwards v. McCormick*, 196 F.R.D. 487, 494 (S.D. Ohio 2000) (citation omitted) ("Plaintiffs here seek to satisfy the numerosity requirement by relying on speculation as to how many people may have received from Defendant collection letters that are similarly violative of the FDCPA. Mere supposition, like that offered by Plaintiffs here, is not enough to satisfy Rule 23(a)'s numerosity requirement.").

### 2. Commonality

Even assuming that Plaintiffs could satisfy the numerosity requirement, the Court is skeptical that they could satisfy the remaining Rule 23(a) and Rule 23(b) requirements. To satisfy the commonality requirement, a plaintiff must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "*Dukes* clarified the scope of this inquiry." *Davis v. Cintas Corp.*, 717 F.3d 476, 487 (6th Cir. 2013). Plaintiffs' "claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "This inquiry focuses on

whether a class action will generate common answers that are likely to drive resolution of the lawsuit." *In re Whirlpool*, 722 F.3d at 852 (citing *Dukes*, 564 U.S. at 350).

Plaintiffs argue that they easily satisfy the proposed commonality requirement. (Doc. 60 at 7–12). According to them, the Form Leases "share common language," and the "suit alleges common injury due to [Defendant's] practices that violate the leases." (*Id.* at 8). The crux of Plaintiffs' commonality argument is that Defendant has breached those leases through a uniform policy of underpaying oil and gas royalties and improperly deducting taxes and costs from those same royalties. (*Id.* at 8–12).

Like Plaintiffs' numerosity argument, the Court is doubtful that Plaintiffs have provided sufficient proof that there are, *in fact*, questions of law or fact common to their proposed class. Plaintiffs' central contention is that Defendant has a uniform policy that injures members of the proposed class in the same way. But they offer little, if any, relevant evidence to support their contention. The Court would have expected, at the least, Plaintiffs to present testimony or an affidavit regarding Defendant's alleged uniform practice of underpaying oil and gas royalties and improperly deducting taxes and costs from those same royalties. Instead, they rely almost exclusively on allegations in the Second Amended Complaint or their own characterization of exhibits submitted with their Reply. (*See* Doc. 60 at 8–12 (stating that the Second Amended Complaint "sufficiently shows commonality" and citing it repeatedly in support); Doc. 83 at 3–15 (citing the Second Amended Complaint and relying on counsel's characterization of exhibits)). The exhibits include: their discovery requests (Doc. 83-1), Shell purchase contracts with the Defendant (Doc. 83-2), a purported flow chart of Defendant's production process (Doc. 83-3), bond well pad trip tickets (Doc. 83-4), compressor station trip tickets (Doc. 83-5), the S&L Spreadsheets (Doc. 83-6), and a purported map of the Seneca Gathering System (Doc. 83-

12

7). On their face, these exhibits are technical documents that do not, by themselves, demonstrate a common question of law or fact. Given their technical nature, they require someone with knowledge of the oil and gas industry to explain them. Counsel for Plaintiffs has attempted to supply that explanation in Plaintiffs' briefing, but, as previously explained, counsel's explanations are not evidence on which the Court can rely. *See supra* at 10.

### 3. Typicality

Rule 23 also requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082. Therefore, this requirement is satisfied if the representative's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007).

Plaintiffs rely on their allegations in the Second Amended Complaint to satisfy the typicality requirement. (Doc. 60 at 13). This is not sufficient to satisfy their burden of proof, particularly having had the opportunity to conduct discovery. *See Jones v. Croft*, No. 2:12-CV-0545, 2013 WL 6008841, at *6 (S.D. Ohio Nov. 13, 2013), *report and recommendation adopted*, No. 2:12-CV-0545, 2014 WL 347039 (S.D. Ohio Jan. 30, 2014) (where "allegations in [a] complaint are not verified," they "are not evidence."); *see also Gooch*, 672 F.3d at 417 (citations omitted) ("A 'limited factual inquiry' assuming plaintiff's allegations to be true does not constitute the required 'rigorous analysis' we have repeatedly emphasized."); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004) (citations omitted) ("If it were appropriate for

a court simply to accept the allegations of a complaint at face value in making class action findings, every complaint asserting the requirements of Rule 23(a) and (b) would automatically lead to a certification order, frustrating the district court's responsibilities for taking a 'close look' at relevant matters, for conducting a 'rigorous analysis' of such matters, and for making 'findings' that the requirements of Rule 23 have been satisfied.")

Because they have not presented the Court with evidence of a common practice or conduct on the part of the Defendant, it is difficult for the Court to conclude that Plaintiffs' claims are typical of any potential class members.

### 4. Adequacy

Class representatives must further demonstrate that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are "two criteria for determining adequacy of representation: 1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (citations and internal quotation marks omitted).

Plaintiffs have not provided the Court with sufficient evidence to meet this requirement. Again, instead of evidence, they rely on allegations in their Second Amended Complaint and conclusory assertions in their briefs. (Doc. 60 at 14). Assuming Plaintiffs were able to present evidence of common interests between the named representatives and the class, basic affidavits regarding the representatives' knowledge of the case and counsel's experience in class litigation would likely satisfy this requirement. Because they have not presented such evidence here, the Court would likely conclude that they do not satisfy Rule 23(a)'s adequacy requirement.

B.     Rule 23(b)

Here, Plaintiffs' inability to satisfy Rule 23(a) is dispositive, but the Court briefly addresses Rule 23(b). Plaintiffs seek to certify a class under Rule 23(b)(3). (Doc. 60 at 3, 14–15). It permits class certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "To evaluate predominance, a court must first *characterize* the issues in the case as common or individual and then *weigh* which predominate." *Martin v. Behr Dayton Thermal Products LLC*, 896 F.3d 405, 413 (6th Cir. 2018) (citation, internal quotation marks, and alterations omitted).

> An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof. The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods, Inc. v. Bouaphakeo*, ––– U.S. –––, 136 S.Ct. 1036, 1045 (2016) (citations, internal quotation marks, and alterations omitted).

The Court has already noted its skepticism that Plaintiffs have presented evidence satisfying Rule 23(a)'s commonality requirement. It is even more skeptical that Plaintiffs have presented evidence satisfying Rule 23(b)(3)'s predominance requirement. This is so because the

15

"predominance criterion is even more demanding" than the commonality requirement. *Comcast*, 569 U.S. at 34 (2013) (citing *Amchem*, 521 U.S. at 623–24). *See also Am. Med. Sys.*, 75 F.3d at 1084 (recognizing that the Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in "that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues."). Having failed to present sufficient evidence to satisfy the commonality requirement, it is difficult for the Court to see how Plaintiffs could meet the even more demanding predominance requirement.

## C. Subclasses

The Court addresses one final difficulty Plaintiffs have. Plaintiffs seek to certify three subclasses of leaseholders, one for each of the Form Leases (2012, 2013, and 2014) at issue. In cases in which a plaintiff proposes subclasses, "an additional consideration . . . is whether there is a named representative of each subclass." *Zehentbauer Family Land LP v. Chesapeake Expl., L.L.C.*, No. 4:15CV2449, 2018 WL 3496089, at *5 (N.D. Ohio July 20, 2018) (citing *Roby v. St. Louis Southwestern Ry. Co.*, 775 F.2d 959, 961 (8th Cir. 1985)). Courts frequently deny certification of subclasses in the absence of a named representative for each subclass. *See, e.g.*, *Zehentbauer Family Land LP*, 2018 WL 3496089, at *5 (declining to certify subclass where none of name representative were parties to lease at issue in that subclass); *Hoffman v. Blattner Energy, Inc.*, 315 F.R.D. 324, 333 (C.D. Cal. 2016) (denying motion for class certification as to two particular subclasses where putative class representative lacked standing to raise claims related to those proposed subclasses); *Biediger v. Quinnipiac Univ.*, 2010 WL 2017773 at *5 (D. Conn. 2010) (denying certification of a subclass in a gender discrimination suit based on alleged disparity of athletic opportunity when the proposed subclass contained women who had been

dissuaded from enrolling but the named class representatives were all current students); *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 472 (D.N.J. 2009) (denying certification for a subclass of consumers who received refunds for overpayment that did not include interest payments, when none of the class representatives were members of the proposed subclass).

Here, the named Plaintiffs are parties to the 2013 Form Lease. (*See* Docs. 44-5, 44-6; Doc. 45 at ¶¶ 3–4, 54). It appears that they are not members of the 2012 Form Lease and 2014 Form Lease subclasses. The named Plaintiffs implicitly acknowledge the problem this poses for their representation of those subclasses. (*See* Doc. 83 at 18). They request that the Court certify only the 2013 Form Lease subclass with respect to their severance tax claim and that, if the Court takes issue with their representation of the other subclasses, they be permitted to amend the Second Amended Complaint. (*See id.*). As Plaintiffs appear to recognize, the 2012 Form Lease and 2014 Form Lease subclasses should not be certified because the named Plaintiffs are not members of those subclasses. *See supra* at 16–17 (collecting cases). Thus, even if Plaintiffs had otherwise done enough for certification, it would be only a partial win.

## IV. CONCLUSION

In summary, Plaintiffs have failed "to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc" to certify the proposed class. *Dukes*, 564 U.S. at 350. For the foregoing reasons, Plaintiffs' Motion to Certify Action as a Class Action and to Appoint Class Counsel is **DENIED**. The Court will hold a status conference in this matter on October 11, 2018 at 10:30 a.m. to discuss progression of this case.

IT IS SO ORDERED.

Date: September 26, 2018          /s/Kimberly A. Jolson  
                                                KIMBERLY A. JOLSON  
                                                UNITED STATES MAGISTRATE JUDGE